1

2

3                                                              The Honorable Lauren King

4

5

6

7                          UNITED STATES DISTRICT COURT

8                          WESTERN DISTRICT OF WASHINGTON
                                     OF SEATTLE
9

10   IVAN SAGDAI,                              Case No. 2:21-cv-00182-LK

                              Plaintiff,
11

12   vs.                                       PLAINTIFF'S MOTION IN LIMINE

13   TRAVELERS HOME AND MARINE                 {NOTE ON MOTION CALENDAR:
     INSURANCE COMPANY, a foreign              Friday, December 16, 2022}
14   corporation doing business in Washington,
15                                             Oral Argument Requested

16                            Defendant.

17        Plaintiff, Ivan Sagdai, by and through his attorney Gavin Flynn, submits the following

18   Motions in Limine:
19
                              I.    CERTIFICATION
20

21        Pursuant to LCR 7(d), Plaintiff has made a good faith effort to confer with defendant The

22   Travelers Home and Marine Insurance Company. The parties conferred telephonically on

23   November 21, 2022, at 1:30pm. The parties were not able to come to a complete agreement as to
24
     the issues subject to exclusion in Ivan Sagdai's Motion in Limine.
25

26   //

27   //

28

29

The Law Office of Gavin Flynn
1499 SE Tech Center Place, Suite 135
Vancouver, WA 98683
Tel: (360) 260-5486
Fax: (360) 883-9361

## II.   RELIEF REQUESTED

Ivan Sagdai respectfully asks the Court for an Order in Limine, ordering the Defendant, Defendant's attorney, and Defendant's witnesses not to directly or indirectly mention, refer to, interrogate concerning, or attempt to convey in any manner any of the facts indicated below without first obtaining the permission of the Court, and further, that the defendants' attorney be instructed to warn and caution his client and every witness strictly to follow any order entered by the court.

## III.   STATEMENT OF RELEVANT FACTS

Ivan Sagdai purchased insurance from The Travelers Home and Marine Insurance Company ("Travelers"). Ivan Sagdai was rear-ended in a collision and submitted a claim to Travelers for PIP and UIM. Travelers practice is to have one adjuster assigned to a PIP claim and a separate adjuster assigned to the UIM claim. Travelers' policy is to not share information between the two claims files without the insured's permission.

Ivan Sagdai's attorney revoked authorization to share information between the PIP and UIM claims files. Ivan Sagdai's attorney requested that if Travelers disagreed with that position, that Travelers should promptly respond. Travelers did not respond to the revocation request.

Travelers UIM adjuster and supervisor reviewed the PIP files without permission.

Ivan Sagdai's attorney submitted a UIM claim and claimed that he suffered a brain injury, in addition to other injuries.

Travelers made an offer in compromise and asserted that Ivan Sagdai did not suffer a brain injury but suffered a contusion-type injury. Travelers claimed they had an internal medical reviewer review the file.

Ivan Sagdai's attorney asked for a copy of the internal medical review and the credentials of the internal medical reviewer. Travelers refused to provide either a copy of the internal medical

Case No. 2:21-cv-00182-LK

**The Law Office of Gavin Flynn**
1499 SE Tech Center Place, Suite 135
Vancouver, WA  98683
Tel: (360) 260-5486
Fax: (360) 883-9361

review or the credentials of the internal medical reviewer.  However, for the first time, Travelers asked for permission to access the PIP file. Ivan Sagdai refused to give his permission.

This litigation ensued. Travelers requested a rule 35 examination, which the court granted. Travelers hired Dr Bays to perform the rule 35 examination and he produced a report with his opinions and the factual basis for them. Travelers submitted Dr Bays report as part of its expert witness disclosure. After the expert witness disclosure, Travelers submitted a declaration of Dr. Bays which included facts which were not provided in his report or the expert witness disclosure, and which changed his opinions as stated in the report.

## IV.   ISSUES SUBJECT TO EXCLUSION, LAW, AND ARGUMENT

Plaintiff and defense counsel agree to exclude the following items from Plaintiff's Motions in Limine:

### 1. LEGAL OPINIONS/CONCLUSIONS OR STATEMENTS OF THE LAW FROM CLAIMS HANDLING ADJUSTERS.

*No opinions from claims handling experts on what the law is or ultimate conclusions of law.*

### 2. EFFECT ON INSURANCE RATES OR PREMIUMS

*No mention, comment, question, argument, or other reference whatsoever should be made regarding the subject, effect, or result of a claim, suit, or judgment upon the insurance rates.*

### 3. MOTIONS IN LIMINE

*There should not be any reference to the parties' motions or the Court's rulings on them.*

### 4. TIMING OF OR CIRCUMSTANCES SURROUNDING THE HIRING OF COUNSEL

*No mention, comment, question, testimony, opinion, or argument referencing the timing or circumstances under which plaintiff employed counsel.*

**The Law Office of Gavin Flynn**
1499 SE Tech Center Place, Suite 135
Vancouver, WA  98683
Tel: (360) 260-5486
Fax: (360) 883-9361

5. EXCLUSION OF WITNESSES.

> *All non-party witnesses should be excluded from the courtroom during the course of trial so they cannot hear the testimony of other witnesses.*

6. EXCLUSION OF ANY UNDISCLOSED OPINIONS

> *The parties agree that the court should exclude any opinions that were not disclosed in discovery.*

Plaintiff specifically asks that Dr. Bays testimony should be limited to the facts and opinions disclosed in his Rule 35 Report which was also submitted as the Defendant's Expert Witness Disclosure. After the discovery cutoff and expert witness disclosure, Dr. Bays submitted a declaration that added additional facts and altered his opinions. Dr. Bays should be precluded from referencing any of those additional facts and opinions in his trial testimony.

Plaintiff's Motion in Limine encompasses the following disputed items:

1. PLAINTIFF CAN WAIVE COLLATERAL SOURCE

The courts have made it clear that the plaintiff is allowed to waive the protection of the collateral source rule. In *Ladley v. Saint Paul Fire & Marine Ins. Co.,* the court held the plaintiff was allowed to admit evidence about payments he received from a collateral source, as long as the evidence was relevant to his argument. *Ladley v. Saint Paul Fire & Marine Ins. Co.,* 73 Wash.2d 928, 934, 442 P.2d 983 (1968). This demonstrates that the collateral source rule was created for the protection of the plaintiff, and he/she may waive it if needed.

2. PLAINTIFF'S OR HIS ATTORNEYS' ALLEGED FAILURE TO COOPERATE, MISCONDUCT, OR FAILURE TO COMPLY WITH DUTIES UNDER THE SUBJECT INSURANCE POLICY.

The conduct of Plaintiff and his counsel is irrelevant and not at issue as there is no recognized defense for comparative (also called "reverse") bad faith. To the contrary, Washington has never

**The Law Office of Gavin Flynn**
1499 SE Tech Center Place, Suite 135
Vancouver, WA 98683
Tel: (360) 260-5486
Fax: (360) 883-9361

recognized defenses of "bad faith" brought by an insurer. *See Trinity Universal Ins. Co. of Kansas and Ohio Cas. Ins. Co.,* 176 Wn. App. 185, 201-202, 312 P.3d 976, 985 (2013), *review denied*, 179 Wash. 2d 1010, 316 P.3d 494 (2014) ("[N]owhere does IFCA create an independent right for insurers to bring a claim on their own behalf.") RCW 48.30.015 plainly authorizes a cause of action by a first party insured against the insurer only, and the statute does not provide any affirmative defense based on the *insured's* misconduct. The plain language of IFCA, therefore, precludes such evidence and arguments.

Washington courts recognize that insurers are in unequal positions with their insureds, and, thus, insurers are subject to higher standards. *See, e.g., Coventry Associates v. American States Ins. Co.,* 136 Wn.2d 269, 282-83, 961 P.2d 933 (1998). A leading treatise on insurance, in describing the interplay between insurer and insured, including the unequal bargaining power and inherent reliance relationship, has stated:

> Apart from fraud, however, there has been a general and continuing reluctance to hold insureds to liability under many other theories which do apply to insurers, largely in recognition of the fact that, although the duty of good faith is a mutual one, insurers remain in a far superior position to benefit by its breach, at the same time that imposing liability on insurers is less likely to have the proverbial "chilling effect" on their actions that might be expected from insureds if they were exposed to the same theories of liability.
> *L. Russ, & T. Segalla,* 14 Couch on Insurance Law § 208:3 (3d ed. 2010).

Courts around the country who have faced the claim of bad faith against an insured have almost uniformly rejected the notion. As one commentator stated:

> Although there is apparently one trial court verdict in favor of an insurer for an insured's bad faith, there is a decided bias against imposing such liability on insureds, and there appears to be no other authority which does so. Conversely, there are numerous cases in which attempts to impose bad-faith liability on the insured have failed.
> *Id* at § 208:4 (*citations omitted*).

PLAINTIFF'S MOTION IN LIMINE
- Page 5 of 14

Case No. 2:21-cv-00182-LK

The Law Office of Gavin Flynn
1499 SE Tech Center Place, Suite 135
Vancouver, WA  98683
Tel: (360) 260-5486
Fax: (360) 883-9361

One of the reasons which it is inappropriate to allow an insurer to assert bad faith against the insured is the very nature of the relationship in the context of first-party insurance. As the Washington Supreme Court has noted:

> Contrary to American States' and amicus Insurance Companies' assertions, an insured receives more for its premium than just the possibility its claim will be covered when appropriate. In the relationship between the insured and insurer, **the insurer receives both the premium and control over the arrangement.** In first party situations, the insurer establishes the conditions for making and paying claims. The insurer evaluates the claim, determines coverage, and assesses the monetary value of the coverage.

*Coventry*, 136 Wash.2d at 282-83 (emphasis added). There is a disparate bargaining power between the parties with the insurer in control of the insured's economic future at his most vulnerable time. *See, e.g., L. Russ, & T. Segalla*, 14 Couch on Insurance Law § 208:4 (3d ed. 2010) ("the element of reliance and dependence which underlay imposition of heightened duties on insurers simply do not exist in the context of an insured's responsibilities…")

Other states have found that reverse bad faith is inappropriate for many of the same reasons. *See, e.g., Johnson v. Farm Bureau Mut. Ins. Co.,* 533 N.W.2d 203, 208 (Iowa 1995) ("Iowa does not recognize action for "reverse bad faith" by insurer against insured"); *Stephens v. Safeco Ins. Co. of America*, 258 Mont. 142, 852 P.2d 565 (Mont. 1993) *see also Tokles & Son, Inc. v. Midwestern Indemn. Co.,* 65 Ohio St.3d 621, 632-33, 605 N.E.2d 936 (Ohio 1992) ("This court has never recognized such a tort and refuses to do so now. As the holder of the purse strings, the insurer has a certain built-in protection from such evils. On the other hand, the insured, who often finds himself in dire financial straits after the loss, must have equal footing which is provided by the ability to sue the insurer for bad faith.")

Appellate courts in other states have refused to allow comparative bad faith as either a counterclaim or an affirmative defense. *See Wailua Associates v. Aetna Cas. And Sur. Co.*, 183 F.R.D. 550, 561 (D. Haw. 1998) ("[T]he insurer-insured relationship is inherently unequal, and

PLAINTIFF'S MOTION IN LIMINE
- Page 6 of 14

Case No. 2:21-cv-00182-LK

**The Law Office of Gavin Flynn**
1499 SE Tech Center Place, Suite 135
Vancouver, WA 98683
Tel: (360) 260-5486
Fax: (360) 883-9361

therefore create[s] a 'one-sided' tort to offset that inequality. To attempt to equalize that tort by comparing an insurer's bad faith with an insured's would disrupt [that] equality"); *In re Tutu Water Wells Contamination Litigation*, 78 F. Supp. 2d 436, 454 (D.V.I. 1999) (Rejecting the affirmative defense of "comparative bad faith") ("[M]ost jurisdictions that have refused to acknowledge comparative bad faith have based their decisions on the theory that the inherent inequality between the insurer and the insured warrants an imposition of tort liability upon the insurer for breaches of the contractual duty of good faith, but not the insured."). *See also Southland Lloyd's Ins. Co. v. Tomberlain,* 919 S.W.2d 822, 832, fn. 5 (Tex.Ct.App. 1996); *Stumpf v. Continental Cas. Co.*, 102 Or. App. 302, 309, 794, P.2d 1228 (Or. App. 1990); *Nationwide Property & Cas. Ins. Co. v. King,* 568 So.2d 990, 990-991(Fla. 1990); *First Bank of Turley v. Fidelity and Deposit Ins. Co. of Maryland,* 928 P.2d 298, 308 (Okla. 1996); *Agric. Ins. Co. v. Superior Court of Los Angeles County*, 70 Cal.App.4th 385, 387 (1999).

The California Supreme Court in *Kransco v. American Empire Surplus Lines Ins. Co.,* explained:

> The scope of the insured's duty of good faith and fair dealing in turn is confined by the express contractual provisions of the policy. An insured's reciprocal duty of good faith and fair dealing does not always necessitate reciprocal conduct . . . Because an insured's breach of the covenant does not sound in tort, the insured's contractual breach of an express policy provision cannot be raised by the insurer as a defense in a bad faith action brought against it by the insured. It would be illogical to allow the insurer in such a suit to instead interpose as a defense the insured's contractual breach of an implied policy provision (i.e., the covenant of good faith and fair dealing) based on those same express policy terms. . . .
> In denying in part the insurer's petition for a writ of mandate to set aside the trial court's order sustaining the demurrer to the reverse bad faith crossclaim, the Agricultural court explained: "An insurer has no claim against its insured in tort for breach of the covenant of good faith and fair dealing. A breach of this covenant is, at base, a breach of contract. A relationship including specialized circumstances of reliance and dependence is necessary to transmute such a contractual breach into a tort. Such circumstances do not exist in the context of an insured's responsibilities toward its insurer, or in the reciprocal context of an insurer's legitimate expectations from its insured.

The Law Office of Gavin Flynn
1499 SE Tech Center Place, Suite 135
Vancouver, WA  98683
Tel: (360) 260-5486
Fax: (360) 883-9361

*Kransco v. American Empire Surplus Lines Ins. Co.* 97 Cal. Rptr. 2d 151, 162-63, 2 P.3d 1 (2000) (*internal citations omitted*).

The jury will assess the "whether Insurer's denial of coverage was unreasonable when it occurred, **not whether later developments could have vindicated the Insurer's decision**. *See Fireman's Fund Ins. Companies v. Alaskan Pride Partnership*, 106 F.3d 1465 (9th Cir. 1997).

Reverse/comparative bad faith has not been recognized in Washington and has specifically been rejected in other jurisdictions.

### 3. REFERENCE TO PRIOR COLLISION INVOLVING MR. SAGDAI.

There is little or no relevancy to any collision that occurred prior to October 20, 2013. Fed. R. Evid. 401. With the exception of worse vision in his right eye, none of Plaintiff's claims are for aggravation of preexisting injuries, as Mr. Sagdai was successfully running his business and not in pain. To the extent that prior collisions have any minimal relevancy, it would be substantially outweighed by the unfair prejudice to Mr. Sagdai and confusion of the issues it would cause the jury. Fed. R. Evid. 403.

### 4. EVIDENCE OF PRIOR INJURY, OR ANY UNRELATED INJURIES, MEDICAL CONDITIONS OR TREATMENT INCLUDING PRE-COLLISION INJURIES AND TREATMENT OR DEGENERATIVE DISK OR JOINT DISEASE.

As mentioned in Mr. Sagdai's records and by his treating providers, with the exception of the worse vision in his right eye, there is no evidence that Mr. Sagdai had any relevant injuries or limitations prior to this motor vehicle collision. The defendant should not be permitted to seek admission of Mr. Sagdai's records or history predating this collision. These records are not relevant and the prejudice of said records outweighs any probative value for many reasons. Defense may attempt to prove that Mr. Sagdai's symptoms after this collision stem from an aggravation of a previously existing condition.

The Law Office of Gavin Flynn
1499 SE Tech Center Place, Suite 135
Vancouver, WA  98683
Tel: (360) 260-5486
Fax: (360) 883-9361

This theory is false and misleading, as defendant's own doctors agree there is no evidence that Mr. Sagdai was symptomatic before this collision.

The Washington State Supreme Court reaffirmed it is error to admit evidence into trial of preexisting conditions that are asymptomatic in the weeks or months before a collision. Hoskins v. Reich, 142 Wash. App. 557 (2008). In *Hoskins,* the trial court allowed evidence that the plaintiff was complaining of neck pain and had treated with a chiropractor only six months before the accident which was the subject of litigation. There was no evidence that the plaintiff was having difficulties in the weeks and months immediately before the accident. The Court of Appeals held it was an abuse of discretion to allow this pre-accident information in and stated, "Only evidence of a symptomatic condition immediately before an aggravating accident is admissible on the issue of proximate cause." *Id. At 570; see Little v. King* 160 Wn. 2d 696 (2007) (mere existence of pre-existing conditions is insufficient to infer casual relationship between injury complained of and preexisting condition).

Likewise in Harris v. Drake,116 Wn.2d 261, 65 P.3d 350(2003), the Washington State Supreme Court re-affirmed this principle and rejected a defense technique of simply pointing to facts in the record to suggest the lack of causation.

In this case, after the discovery cutoff, Dr. Bays claimed that Ivan Sagdai's cognitive issues stem from 1) a childhood eye injury, 2) high blood pressure and/or compliance with blood pressure medication, and 3) alcohol abuse.   Dkt. 43, ¶ 11. As described below, each of these is irrelevant and inadmissible.

Childhood eye injury

In his deposition, Ivan testified he had poor vision in his right eye before the collision, which got worse after the collision.  He said that before the collision, "I didn't have problem reading captions on the screen. Now I cannot read them."  That is the only evidence of the state of Ivan's vision before

The Law Office of Gavin Flynn
1499 SE Tech Center Place, Suite 135
Vancouver, WA  98683
Tel: (360) 260-5486
Fax: (360) 883-9361

the collision.  As in <u>Harris v. Drake</u>, the mere existence of a pre-existing condition is insufficient to infer a causal relationship between the injury complained of and a preexisting condition.

### High Blood Pressure

In his deposition Ivan stated that he never had blood pressure problems before the collision. Defense may claim that Ivan complained of an episode of high blood pressure to his doctor in 2011, two years before the collision.  However, the doctor checked Ivan's blood pressure and it was in the healthy range.  There is no record, medical or otherwise, of Ivan having high blood pressure before the collision, though his blood pressure has definitely raised afterwards.

### Alcohol Abuse

The medical records indicate only one time when Ivan had an issue with alcohol abuse, and it occurred in 2011 at the same visit he thought he had an episode of high blood pressure.  His doctor determined that he was not alcohol dependent and urged him to restrict his drinking.  All other records since that time indicate that Ivan only drank moderately on weekends after that.

### 5. IRRELEVANT AND MISLEADING FACTS OR ARGUMENTS SUGGESTING THE COLLISION DID NOT CAUSE PLAINTIFF'S INJURIES, HEADACHE, DIZZINESS AND BRAIN INJURY.

Defendant claims that a lack of pre-collision testing renders them unable to relate his cognitive injuries to the collision.   This turns the law on its head.  Under <u>Harris v. Drake</u>, unless the defendant can point to a symptomatic condition immediately preceding the collision, a directed verdict on causation is appropriate.  *Harris* at 493-94.

Dr. Bays claims to be unable to relate the damage shown on the MRI DTI imaging to the collision "in the absence of a pre-incident MRI study proving that those changes were not present before the incident…" Dkt. 43-1

PLAINTIFF'S MOTION IN LIMINE
- Page **10** of **14**

Case No. 2:21-cv-00182-LK

The Law Office of Gavin Flynn
1499 SE Tech Center Place, Suite 135
Vancouver, WA  98683
Tel: (360) 260-5486
Fax: (360) 883-9361

Dr. Bays claims to be unable to relate Ivan's partial anosmia (loss of sense of smell) which was first documented shortly after the collision because "there was no pre-accident testing (Mr. Sagdai was not complaining of this symptom) for comparison, and there are other causes for loss of sense of smell (in his case, Covid.)"

Ivan Sagdai's Covid and complete loss of sense of smell over nine years after the collision is not relevant to the partial loss of smell he suffered for nine years. It is undisputed that he did not have Covid at the time of the collision in 2013.

ER 402/403. Exclusion is also consistent with the holding in Harris v. Drake, *supra,* where simply pointing to facts in the record suggests the lack of causation is insufficient. Such irrelevant, speculative, and misleading facts include the following:

- **Plaintiff's airbags did not deploy in the collision.**

This is irrelevant in a rear-end collision and does nothing but improperly suggest that the impact was not severe, when Defendant's own adjusters describe the impact as "severe", "significant", etc…

- **Plaintiff did not strike anything inside the vehicle during the collision or lose consciousness.**

These have no relevance in this case, where neither of these factors are relevant to whether or not Mr. Sagdai suffered a concussion. It is highly misleading.

Comments or queries on these issues will result in no more than speculation on the part of the jury. "A verdict cannot be founded on mere theory or speculation." *Marshall v. Bally's Pacwest Inc.,* 94 Wash. App. 372, 972 P.2d 475, 479 (1999).

PLAINTIFF'S MOTION IN LIMINE
- Page **11** of 14

Case No. 2:21-cv-00182-LK

**The Law Office of Gavin Flynn**
1499 SE Tech Center Place, Suite 135
Vancouver, WA 98683
Tel: (360) 260-5486
Fax: (360) 883-9361

<u>6. PLAINTIFF'S DOCTORS TO BE REFERRED TO ONLY AS DOCTOR.</u>

It has become common for certain defense counsel to refer to doctors of chiropractic as Mister instead of Doctor, or refer to a chiropractor as Chiropractor Doe, so as to make a distinction between chiropractors and medical doctors. This is improper and the Court should rule that defendant's counsel does not adopt this tactic.

RPC 4.4 states in pertinent part:

> In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay or burden third person…

Doctors of chiropractic are licensed to practice their profession in this State and have been given the title of doctor by the State. They are typically referred to as "doctor." By embarrassing, demeaning or otherwise withholding respect from one of these witnesses, a lawyer is indirectly implying their opinion as to the credibility of a witness or the value of his or her medical services. The Court should instruct counsel that this will not be permitted.

## V.   CONCLUSION

Parties may file motions in limine before or during trial "to exclude anticipated prejudicial evidence before the evidence is actually offered." *McArthur v. Rock Wood Fired Pizza & Spirits*, Case No. C14-0770 RSM, 2017 U.S. Dist. LEXIS 58373 **1-2 (W.D. Wash., April 14, 2017), quoting *Luce v. United States*, 469 U.S. 38, 40 n.2, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984).

Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the court's inherent authority to manage the course of trials. *Luce*, 469 U.S. at 41 n.4, citing Fed. R. Evid. 103(c) and Fed R. Crim. Proc. 12(e).

To resolve such motions, the Court is guided by Fed. R. Evid. 401 and 403. Specifically, the Court considers whether evidence "has any tendency to make a

**The Law Office of Gavin Flynn**
1499 SE Tech Center Place, Suite 135
Vancouver, WA  98683
Tel: (360) 260-5486
Fax: (360) 883-9361

fact more or less probable than it would be without the evidence," and whether "the fact is of consequence in determining the action." Fed. R. Evid. 401. But the Court may exclude relevant evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

*McArthur*, 2017 U.S. Dist. LEXIS 58373, at *1-2.

Motions in limine are used to ensure evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible. *Bouchard v. American Home Products Corp.*, 213 F. Supp.2d 802, 810 (N.D. Ohio 2002). A motion in limine should be granted if the evidence sought to be excluded is inadmissible for any purpose. *Noble v. Sheahan*, 116 F. Supp. 2d 966, 969 (N.D. Ill. 2000); *Hawthorne Partners v. AT&T Technologies, Inc.*, 83 1 F. Supp. 1398, 1400 (N.D. Ill.1993).

Based on the foregoing, Ivan Sagdai respectfully asks that the Court GRANT his motions in limine to keep the trial in this matter focused on the actual issues in controversy and to prevent exposing the jury to improper and inadmissible evidence.

DATED this ___29___ day of November 2022.

GAVIN FLYNN, WSBA#: 25781
Attorney for Plaintiff

**The Law Office of Gavin Flynn**
1499 SE Tech Center Place, Suite 135
Vancouver, WA  98683
Tel: (360) 260-5486
Fax: (360) 883-9361

1

## CERTIFICATE OF SERVICE

2      The undersigned hereby certifies under the penalty of perjury under the laws of the United

3   States of America that on this date I caused to be served in the manner noted below a true and

4   correct copy of the foregoing document on the parties mentioned below as indicated:

5

6   *Tom Lether*
    *Kasie Kashimoto*
7   *Eric Neal*
    *Ellen McGraw*
8   Lether & Associates PLLC
9   1848 Westlake Avenue N, Suite 100
    Seattle WA 98109
10  Email: tlether@letherlaw.com
11         kkashimoto@letherlaw.com
           eneal@letherlaw.com
12         emcgraw@letherlaw.com
           *Counsel for Defendant*
13

14      **By: [X] ECF**

15  DATED this 29th day of November 2022.

16

17

18  DeAndra Macheras
    Paralegal
19

20

21

22

23

24

25

26

27

28

29

PLAINTIFF'S MOTION IN LIMINE      Case No. 2:21-cv-00182-LK
- Page **14** of 14

The Law Office of Gavin Flynn
1499 SE Tech Center Place, Suite 135
Vancouver, WA 98683
Tel: (360) 260-5486
Fax: (360) 883-9361